IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19CV703-GCM

| | |
|---|---|
| JASEN GLENN SIDES and KENNETH SCOTT SIDES, as the Co-Trustees of the Trust under the Will of Betty Query Sides; and as the Co-Executors of the Estate of Betty Query Sides, <br><br>    Plaintiffs, <br><br> v. <br><br> ATHENE ANNUITY AND LIFE COMPANY, <br><br>    Defendant. | ORDER |

This matter is before the Court upon Defendant Athene Annuity and Life Company's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and is ripe for disposition.

I.   FACTUAL BACKGROUND

According to the Complaint, Plaintiffs' mother, Betty Query Sides, was the owner of two annuities issued by a predecessor of Athene. Compl. ¶ 5. The beneficiary of the annuities was the "Trust Under the Will of Betty Query Sides" (the "Trust"), and Plaintiffs are the Trustees of the Trust and also the co-executors of their mother's estate. *Id.*

Pursuant to the terms of the annuities, upon the death of the annuitant, Defendant was required to "pay the Beneficiary the Death Benefit." *See* Annuity Contract, Doc. No. 8-1, at p.1.[1] ("The Death Benefit provided by this Contract will be paid upon receipt by the Company at

---

[1] In deciding a motion to dismiss, a court may consider documents "integral to and explicitly relied on in the complaint" provided the non-moving party does not challenge the documents' authenticity. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In this case, the annuity contract, death benefit claim form, and death benefit check are all documents that are integral to, and explicitly relied upon throughout the Complaint. *See, e.g.*, Compl.

1

its Administrative Office of due proof of the Annuitant's death and surrender of the Contract.") Following their mother's passing, Plaintiffs made a claim with Defendant for the $54,459.56 death benefit under the annuities by completing the form that Defendant provided. Compl. at ¶¶ 7-8.

The Deferred Annuity Claim Form for Entity Beneficiaries ("Claim Form")[2] requires the claimant to provide certain information to process the death benefit request. Under the Beneficiary/Claimant Information section, Plaintiffs identified the "Beneficiary" as the "Trust Under Will of Betty Query Sides" with 8615 Lochinuar Drive, Charlotte, NC 28227 as the Trust's Permanent Address. Claim Form, Doc. No. 8-2, Section 3. Plaintiffs identified the "Claimant" as Plaintiff Jasen Glenn Sides in his capacity as Trustee with the same Mailing Address of 8615 Lochinuar Drive, Charlotte, NC 28227. *Id*. Plaintiffs selected a lump sum payment for the death benefit, and requested that the payment be sent to "the beneficiary's Mailing Address provided in Section 3" of the form. *Id*. at Section 4, 5. The Mailing Address provided in Section 3 was 8615 Lochinuar Drive, Charlotte, NC 28227. *Id.* at Section 3. Plaintiffs were also required to verify certain information regarding the Trust, including that they were the Trustees of the Trust and that, under the Trust, they both must sign in Section 9 to authenticate the Claim Form. *Id*. at Section 7; *see also* Compl. at ¶¶ 32-36. On April 30, 2018, consistent with the authentication requirements, both Plaintiffs signed and submitted the Claim Form to Defendant. Doc. No. 8-2, Section 9.

---

¶¶ 5, 6, 7, 8, 19, 29, 30 (relying on the annuity contract); ¶¶ 8, 32, 33, 34, 35, 36 (relying on and purporting to quote the death benefit claim form); ¶¶ 10, 11, 12, 14, 16, 17, 29, 30, 37, 38, 39, 40, 73, 74, 75, 76, 77 (relying on the death benefit check). The Defendant has attached these documents to its Memorandum in support of its Motion to Dismiss.
[2] Defendant attached a copy of the Claim Form to its Memorandum in support of its Motion to Dismiss. *See* Doc. No. 8-2)

2

On May 7, 2018, Defendant asserts that it issued the Death Benefit Claim Check (the "Check") in accordance with the Claim Form submitted by Plaintiffs.[3]  The Check was issued to the Trust Under Will of Betty Query Sides (the Beneficiary designated in the Claim Form), care of Jasen Glenn Sides, Trustee (the Claimant identified in the Claim Form), and mailed to 8615 Lochinuar Drive, Charlotte, NC 28227 (the Trust's Permanent Address identified in the Claim Form).  Doc. No. 8-3; *see also* Compl. at ¶ 38.

According to the Complaint, Plaintiffs never received the Check.  Compl. at ¶ 10.  When they contacted Defendant about the missing Check, Defendant instituted an investigation and informed Plaintiffs that the Check was cashed in Daytona Beach, Florida by an unknown individual who had purportedly assumed one of the Plaintiffs' identities.  *Id.* at ¶¶ 11, 12, 14, 40.  After its fraud investigation revealed that the Check was fraudulently cashed, Defendant made a formal request to recover the stolen funds from the intermediary financial institution. *Id.* at ¶ 18.  Plaintiffs allege that Defendant "recovered" the stolen funds. *Id*. at ¶ 19.  Defendant contacted Plaintiffs and advised that it would be transmitting replacement funds to the Plaintiffs. *Id.* at ¶¶ 21-23. When the funds did not arrive, Plaintiffs contacted the Defendant and were told that Defendant was compelled "per Florida law" to return the funds to the bank that cashed the Check.  *Id.* at ¶¶ 25-26.

Plaintiffs allege that the theft of the Check by the unknown identity thief renders Defendant in breach of its obligations under the annuity contracts to deliver the death benefit proceeds to Plaintiffs' address.  *Id*. at ¶¶ 28-31.  Plaintiffs also contend that Defendant's refusal to send the Plaintiffs replacement funds for the proceeds stolen by this unknown individual

---

[3] Defendant also attached a copy of the Check to its Memorandum. *See* Doc. No. 8-3.

amounts to unfair and deceptive trade practices and was done in bad faith. *Id.* at ¶¶ 43-61, 65-80.

## II. DISCUSSION

A motion to dismiss tests whether the plaintiff has properly stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While the court must accept well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff, the court need not accept the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (citation omitted). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint "must make factual allegations which 'raise a right to relief above the speculative level' and plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clayton v. Bank of N.Y. Mellon Trust Co. N.A.*, 2017 WL 4225628, at *2 (W.D.N.C. Sept. 21, 2017) (quoting *Twombly*, 550 U.S. at 545-47). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

### A. North Carolina's Uniform Commercial Code

Defendant first argues that North Carolina's Uniform Commercial Code ("UCC") bars all of Plaintiffs' claims. N.C. Gen. Stat. § 25-3-414(c), titled "Obligation of drawer" provides that: "If a draft is accepted by a bank, the drawer is discharged, *regardless of when or by whom acceptance was obtained*." (emphasis added). In other words, the obligation to make payment is

4

discharged when the bank accepts a check for payment, regardless of who deposited or cashed the check. This provision may in fact bar any UCC claims,[4] but the Court must nevertheless address Plaintiffs' claims for breach of contract, unfair and deceptive trade practices, and bad faith.

### B.     Breach of Contract

"Under North Carolina law, a claim for breach of contract requires a plaintiff to allege 'the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach.'" *Sports Med Props., LLC v. Talib*, 2019 WL 3403372, at *3 (W.D.N.C. Jul. 26, 2019) (citation omitted). Defendant asserts that while Plaintiffs generally plead the existence of the annuity contracts between their mother and the Defendant, they fail to plead any facts identifying the specific contractual provision allegedly breached, or the facts constituting any alleged breach.

Plaintiffs contend that Defendant breached the contract by "failure to deliver" the Check to the Plaintiffs and for failing to list *both* Trustees as payees on the check, thereby reducing the risk of fraud. With respect to Plaintiffs' first argument, there appears to be no contractual language imposing a requirement upon Defendant to ensure the physical receipt of a death benefit check that was mailed to the address provided on the Claim Form. Pursuant to the express terms of the annuity contract, Defendant is required only to "pay the Beneficiary the Death Benefit" upon the death of the annuitant as directed. *See* Doc. No. 8-1, at p. 1.  The Check itself shows that it was issued to the designated beneficiary at the mailing address provided on the Claim Form.  *See* Doc. Nos. 8-2, 8-3. Plaintiffs do not allege that Defendant failed to issue or

---

[4] In support of their argument, Defendant cites *Affiliated Health Group, Ltd. v. Devon Bank*, 58 N.E.3d 772 (Ill. App. Ct. 2016), a case from Illinois applying the same provision. However, all claims that were dismissed in that case were alleging violations of the UCC.

5

mail the check or that it was somehow mailed to the wrong address. Absent such allegations, the law presumes that the Check was delivered to 8615 Lochinaur Drive, Charlotte, NC 28227, and received by Plaintiffs. *See Atlantic & E. Carolina Ry. Co. v. Southern Outdoor Advertising, Inc.*, 501 S.E.2d 87, 89 (N.C. Ct. App. 1998) (noting "well-settled" rule that mail properly addressed and stamped is presumed received by the addressee). Thus, there can be no breach based upon a failure to deliver the Check.

Plaintiffs likewise fail to identify any contractual provision that would require Defendant to list both Trustees as payees on the Check. In support of their argument, Plaintiffs refer to a section of the Claim Form relating to Trust Information. However, the Claim Form is not a contract; it is merely an administrative form used to process the death benefit. Regardless, nowhere in the Claim Form does it obligate Defendant to list both Trustees on the Check. The Claim Form section upon which Plaintiffs rely relates to Defendant's requirement that both Trustees sign the Claim Form to authenticate the request. *See* Doc. No. 8-2 at section 9 ("ALL of the current Trustees, acting together (All current trustees must sign and date in Section 9.)").

It appears to the Court that Plaintiffs have failed to allege any breach of specific provisions of the contract. Accordingly, they have failed to state a plausible claim for breach of contract.

### C.     Unfair and Deceptive Trade Practices Act

To plead a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), a plaintiff must allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. *See Williams v. Ohio Nat'l Life Assurance Co.*, 364 F. Supp. 3d 605, 614 (W.D.N.C. 2019) (citation omitted). Although N.C. Gen. Stat. § 58-63-15(11), defining unfair settlement practices in the context of

6

insurance, does not include a private right of action, a plaintiff may allege violations of § 58-63-15(11) under the UDTPA. *Barbour v. Fidelity Life Ass'n*, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019) (citation omitted).

In this case, Plaintiffs purport to assert a claim for general violation of the UDTPA based on Defendant's alleged breach of contract (Compl. at ¶¶ 44-45), and also a secondary UDTPA claim under § 58-63-15(11)(f) based on Defendant's alleged failure to "effectuate prompt, fair and equitable settlements" of claims in which "liability has become reasonably clear." *Id.* at ¶ 46. Because Plaintiffs fail to state a claim for breach of contract, to the extent their UDTPA claim relies on breach of contract, it must likewise fail.

In support of their allegations under § 58-63-15(11)(f), Plaintiffs specifically allege that Defendant's efforts to assist them in recovering the stolen funds after the fraudster cashed the Check constitutes an unfair claim settlement practice. *See id*. at ¶¶ 46-48. While Plaintiffs allege that Defendant was able to subsequently hold up the proceeds after it was discovered that the Check was cashed under false pretenses, they contend that it ultimately released the funds to the check-cashing agency that had accepted and cashed the Check based on obligations under Florida law.[5] *See id.* at ¶¶ 26, 48, 54, 56.

First of all, the Court finds that Defendant's actions in investigating the fraud and assisting Plaintiffs in recovering the stolen money do not constitute a claims settlement practice. Even if Defendant's actions could be considered a claims settlement practice, Plaintiffs do not plausibly demonstrate that Defendant's liability to them was reasonably clear. The Complaint expressly alleges that, following the theft, Defendant determined that the check-cashing entity

---

[5] Defendant explains that while it was able to investigate the fraud following the Check cashing, it did not recover, and was not in possession of, the stolen money as Plaintiffs suggest. It was simply able to delay the depositing bank from honoring the obligation pending a review of entitlement to the proceeds as a holder in due course of the draft under various laws governing negotiable instruments.

7

was entitled to payment on the negotiated instrument under various states' laws. Plaintiffs argue that liability was reasonably clear because an employee of the Defendant admitted Plaintiffs were owed the money and informed them that they would receive replacement funds by wire transfer. *See id*. at ¶ 21. However, the Complaint also alleges that Defendant subsequently determined that it was "compelled 'per Florida law'" to release the funds to the entity that cashed the check. *See id.* at ¶ 26. While Plaintiffs may disagree with Defendant's assessment, this does not transform their dispute into a UDTPA claim. *See Universal Underwriters Ins. Co. v. Lallier*, 334 F. Supp. 3d 723, 738 (E.D.N.C. 2018) (dismissing UDTPA claim where insured failed to plausibly allege that the insurer's liability was reasonably clear); *Clear Creek Landing Home Owners' Ass'n v. Travelers Indem. Co. of Conn.*, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (dismissing UDTPA claim for failing to allege that liability was reasonably clear; "the fact that Plaintiff may disagree with the assessment of Defendant … does not transform a run of the mill insurance dispute into a tort cognizable under [the UDTPA]"). Based on the foregoing, the Court finds that Plaintiffs have failed to sufficiently state a claim for violation of the UDTPA.

### D.  Bad Faith

Plaintiffs' final claim is for bad faith. A claim for bad faith refusal to pay an insurance claim requires a plaintiff to plausibly allege an insurer's refusal to pay a valid claim and bad faith. *Martinez v. Nat'l Union Fire Ins. Co*., 911 F. Supp. 2d 331, 337 (E.D.N.C. 2012); *see also Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.,* 11 F. App'x 225, 237-38 (4th Cir. 2001) (unpublished). Bad faith refusal to pay a claim requires: (1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct. *Cleveland Constr., Inc. v. Fireman's Fund Ins. Co*., 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011). "Bad faith means 'not based on honest disagreement or innocent mistake.'" *Topsail Reef Homeowners*

*Ass'n*, 11 F. App'x at 239 (citation omitted). "Aggravated conduct is defined to include 'fraud, malice, gross negligence, insult … willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights.'" *Id.* "A plaintiff, however, must allege more than an honest disagreement as to the validity of the claim." *Clear Creek Landing Home Owners' Ass'n*, 2012 WL 6641901, at *2.

Similar to their allegations supporting the UDTPA claim, Plaintiffs allege that Defendant conducted a fraud investigation in an attempt to recover the stolen proceeds, but ultimately committed bad faith by failing to provide Plaintiffs with replacement funds, instead, releasing the money to the financial institution that cashed the Check. Compl. at ¶¶ 69-70, 80. These allegations do not allege the sort of aggravated conduct required to state a claim for bad faith.

More importantly, the Defendant did not refuse to pay the claim – it approved the claim and issued the Check to Plaintiffs at the address they provided on the Claim Form. Plaintiffs do not dispute that Defendant authorized payment on the original death benefit claim. Rather, they argue that Defendant engaged in bad faith with respect to the manner in which it conducted its fraud investigation after the Check was stolen from Plaintiffs. Plaintiffs' bad faith claim fails as a matter of law and must likewise be dismissed.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED.

Signed: May 1, 2020

Graham C. Mullen
United States District Judge